LMH

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Edward Hernandez,          )     No. CV 05-2853-PHX-DGC (JJM)
                   )
         Plaintiff,     )     **ORDER**
                   )
vs.                    )
                   )
Dora Schriro, et al.,        )
                   )
         Defendants.   )
_____)

       This is a civil rights action filed by a state prisoner.  Plaintiff has requested a preliminary injunction (dkt. #5), and Defendants have moved (dkt. #16) to dismiss Counts I and III for lack of exhaustion.  After careful review of the motions and the record, the Court will deny injunctive relief and dismiss Counts I and III without prejudice.

## BACKGROUND

       Plaintiff, a Native American Indian, is housed at the highest custody level of the Arizona Department of Corrections known as Special Management Unit II.  He was placed in SMU II after he was validated as a member of a Security Threat Group known as the Warrior Society.[1]

---

[1]The ADC defines a Security Threat Group as:

> Any organization, club, association or group of individuals, either formal or informal (including traditional prison gangs), that may have a common name or identifying sign or symbol, and whose members engage in activities that include, but are not limited to:  planning, organizing, threatening, financing, soliciting, committing or

The defendants are ADC Director Dora Schriro, Deputy Warden Carson McWilliams, and Correctional Classification Specialist Dorinda Cordova.   Plaintiff brought four counts for relief in his Complaint:  (1)  the conditions of SMU II trigger a liberty interest requiring periodic review that is meaningful; (2) the conditions of SMU II violate the Eighth Amendment; (3) his continued placement in SMU II is retaliatory for refusing to inform on other prisoners; and (4) his rights under the First Amendment and Religious Land Use of Institutionalized Persons Act were violated by restrictions on his Native American traditions. Plaintiff seeks injunctive relief related to his classification and religious practice, and Defendants seek to dismiss Counts I and III for lack of exhaustion.

## PRELIMINARY INJUNCTION

**A.    Request for Default and Motion to Request Acceptance
of Response as Timely.**

When Defendants failed to file a response to Plaintiff's injunction motion, Plaintiff requested a default judgment.  See dkt. #11 at 5.  Entry of default is not required when a party fails to respond to a motion, and the Clerk of Court properly declined to enter a default because Defendants had answered the Complaint. See FED. R. CIV. P. 55(a).  After Plaintiff requested default, Defendants recognized their error and promptly filed a response along with a motion asking the Court to accept their response as timely.   They explain that they inadvertently overlooked the part of the Court's order that required them to respond to the motion for a preliminary injunction.

Plaintiff has not responded to Defendants' motion to accept their untimely response. The failure to respond may be deemed a consent to the granting of the motion.  See LRCIV 7.2(i).  The length of the delay caused by Defendants was not significant, and there is no indication that Plaintiff has suffered any prejudice.   The Court will therefore grant Defendants' motion to accept the untimely response.

---

attempting to commit unlawful acts or acts that violate the Department's written instructions, which detract from the safe and orderly operation of prisons.

Dep't Ord. 806 (Definitions).

**B.    Parties' Contentions.**

In his motion for a preliminary injunction, Plaintiff asserts that (1) the conditions of his placement violate the Eighth Amendment and trigger a liberty interest requiring a "meaningful" reclassification review, and (2) his right of religious exercise in certain Native American traditions has been infringed.   For relief, Plaintiff requests a "meaningful reclassification" review to lower his scores so that he is returned to the general population, and an order permitting him to participate in certain Native American traditions.   He has submitted a declaration (dkt. #6) in support of his motion.

Defendants have not responded to Plaintiff's claims regarding the conditions of his placement and right to a meaningful reclassification review.   They do assert, however, that Plaintiff is able to participate in most of forms of religious exercise except when security interests justify certain limitations.  In support, Defendants submitted the affidavit of Michael Linderman, the Administrator of Pastoral Activities for the ADC. (Linderman Aff., dkt. #34, Attach. A.)

**C.    Legal Standard.**

A preliminary injunction is an extraordinary remedy and will not be granted absent a clear showing of likely success in the underlying claim and possible irreparable injury.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (*per curiam*); Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995). Alternately, a party may show that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor.  Warsoldier, 418 F.3d at 994.

**D.    Analysis.**

1. Conditions of SMU II.

Plaintiff claims that the conditions in SMU II impose an "atypical and significant hardship" in relation to the ordinary incidents of prison life, and he seeks an order returning him to the general population.  Defendants have not responded to these allegations.  Though unrebutted, Plaintiff's allegations do not merit the extraordinary remedy of injunctive relief.

1    As a prerequisite to preliminary injunctive relief, a plaintiff must do more than allege
2    imminent harm sufficient to establish standing; he must also demonstrate immediate
3    threatened injury. Carribbean Marine Serv. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).
4    In other words, a plaintiff must show a real or immediate threat – a likelihood of substantial
5    and immediate irreparable injury. Gomez v. Vernon, 255 F.3d 1118, 1129 (9th Cir. 2001)
6    (quotation and citation omitted). Speculative injury is not sufficient. Carribean Marine
7    Serv., 844 F.3d at 674.

8    Plaintiff asserts that *if* he is in SMU indefinitely, the long term confinement would
9    cause psychological decomposition. (Mot. at 2; see also Mot. at 4, 10.) He claims that he
10   suffers "*potential* psychological and physical harm" every day he is there. (Mot. at 2.)
11   Whether Plaintiff will be in SMU indefinitely is speculative, and a claim of potential harm
12   does not demonstrate a likelihood of substantial and immediate irreparable injury. Although
13   Plaintiff's allegation of harm might be enough to state a claim, it is not sufficient to warrant
14   injunctive relief.

15    2.  Periodic review.

16   Plaintiff contends that he has been denied adequate process because his placement is
17   reviewed only every 180 days. He claims that the only reason to continue his placement
18   would be misconduct on his part, and he has not committed any misconduct. (Mot. at 3.)
19   Defendants have not responded to this contention. Regardless, Plaintiff has not demonstrated
20   that he will be successful in this claim.

21   Assuming that the conditions of Plaintiff's placement require periodic review as a
22   matter of procedural due process, see Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983),
23   Plaintiff has not asserted what is unconstitutional about the review he receives every 180
24   days. Periodic review must not be pretextual, see id. at 477 n.9, but Plaintiff has not
25   explained why his review is pretextual. Although he believes he must commit misconduct
26   to be retained in SMU II, his STG membership is a justifiable reason for his continued
27   placement. Because Plaintiff has not shown a likelihood of success on the merits, the Court
28   will not grant "meaningful reclassification review" by way of injunctive relief.

1      3.  Religious exercise.

2          Plaintiff contends that his rights under the First Amendment and the Religious Land

3  Use and Institutionalized Persons Act of 2000 have been violated regarding the practice of

4  his Native American traditions.

5          a.  First Amendment.

6          Prisoners retain the First Amendment right to free exercise of religion.  O'Lone v.

7  Estate of Shabazz, 482 U.S. 342, 348 (1987); Henderson v. Terhune, 379 F.3d 709, 712 (9th

8  Cir. 2004).  To state a claim, Plaintiff must allege that Defendants burdened the practice of

9  his religion without any justification reasonably related to legitimate penological interests.

10 Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).  Whether a regulation is reasonably

11 related to legitimate penological interests requires a four-part analysis:  (1) whether there is

12 a valid, rational connection between the regulation and the legitimate governmental interest;

13 (2) whether there are alternative means of exercising the right that remain open to inmates;

14 (3) the impact accommodation of the right will have on guards and other inmates, and on the

15 allocation of prison resources; and (4) the absence of ready regulatory alternatives.  Turner

16 v. Safley, 482 U.S. 78, 90 (1987); accord Henderson, 379 F.3d at 713.

17         b.  Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

18         Under RLUIPA, a government may not impose a substantial burden on the religious

19 exercise of a confined person unless the government establishes that the burden furthers a

20 "compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C.

21 § 2000cc-1(a)(1)-(2).  This "compelling government interest" and "least restrictive means"

22 test replaced Turner's "legitimate penological interest" test.  Warsoldier, 418 F.3d at 994

23 (citing 42 U.S.C. § 2000cc-1(a)).  Under its own terms, RLUIPA must be "construed broadly

24 in favor of protecting an inmate's right to exercise his religious beliefs."  Id. at 995 (citing

25 42 U.S.C. § 2000cc-3(g)).  Last year, the Supreme Court upheld the constitutionality of

26 RLUIPA against an Establishment Clause challenge.  Cutter v. Wilkinson, 125 S. Ct. 2113

27 (2005).

28

1    The inmate bears both the burden of establishing a prima facie case and the burden

2  of persuasion on whether there is a "substantial burden" on the inmate's exercise of religious

3  beliefs.  Warsoldier, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)).  A burden is

4  substantial when it imposes a significantly great restriction or onus upon religious exercise.

5  Id. at 995 (quotations omitted).  If the inmate meets his burden of proof, the government

6  bears the burden of persuasion to prove that the substantial burden on the exercise of

7  religious beliefs is both in furtherance of a compelling governmental interest and the least

8  restrictive means of furthering that compelling governmental interest.  Warsoldier, 418 F.3d

9  at 995 (citing 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

10    c.  Analysis.

11    Because the standards under RLUIPA are more favorable to Plaintiff, the Court will

12  begin with the statute.  Plaintiff's factual allegations and requests for relief regarding this

13  claim are scattered throughout his Complaint, Motion, and Declaration in Support.  The

14  Court reads his pleadings with the required liberality for *pro se* litigants, see Hearns v.

15  Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

16    In Count IV of his Complaint, Plaintiff asserts that (1) despite his requests and

17  contrary to ADC policy, Defendants Schriro and McWilliams prevented him from engaging

18  in sweat lodge and pipe ceremonies with a Native American Spiritual Advisor; (2) contrary

19  to ADC policy, Defendant McWilliams confiscated his red and blue headband, and

20  Defendant McWilliams and Schriro continue to refuse to allow Plaintiff to purchase a

21  headband; (3) contrary to ADC policy, Defendants McWilliams and Schriro continue to

22  refuse to allow Plaintiff to wear his medicine bag or obtain an alternative; and (4) Defendant

23  Schriro refuses to pursue the hiring of a Native American Spiritual Advisor/Medicine Man

24  or Woman so Plaintiff may seek counsel for a sacred pipe or sweat lodge ceremony.  (Compl.

25  at 7 - 7C, dkt. #1.)

26    In his Declaration in Support, Plaintiff alleges that Defendants do not comply with

27  their own policies because he is not allowed to possess and wear religious articles nor have

28  access to a Native American spiritual advisor or volunteer, despite his repeated requests.

1  (Pl.'s Aff., ¶¶ 16-17, dkt. #6.)  In his Motion, Plaintiff asserts that he has not been permitted
2  to wear a headband or a sacred medicine bag in and out of his cell.  (Mot. at 8.)  He contends
3  that general population inmates are allowed to participate in weekly sweat lodge ceremonies,
4  talking circles, annual Pow-Wows, smudging, and the possession of religious articles.  (Pl.'s
5  Aff., ¶ 20, dkt. #6.)

6      For relief, Plaintiff requests an order permitting him (1) to participate in a sacred pipe
7  and sweat lodge ceremony two or three times per year when an advisor or volunteer is
8  available (which he states is significantly fewer times than the weekly ceremonies for general
9  population inmates) (Mot. at 4, 7, dkt. #5); (2) to have a sweat lodge built as required under
10  policy (Mot. at 6, 7); (3) to possess and wear a medicine bag (Mot. at 6, 8; Pl.'s Aff., ¶ 23,
11  dkt. #6); and (4) to participate in talking circles, Pow-Wow ceremonies and smudging as
12  would a general population inmate (Pl.'s Aff., ¶¶ 1, 20).

13      *i. Sweat Lodge.*

14      Plaintiff requests that a sweat lodge be built for SMU II inmates.  Sweat lodge
15  ceremonies are not permitted for inmates in SMU II because the recreational areas, which are
16  "designed to provide the highest possible security for the most dangerous inmate," are not
17  capable of accommodating a sweat lodge.  Linderman Aff., ¶ 21.  Inmates who participate
18  in sweat lodge ceremonies disappear from view, which is permitted in lower level custody
19  arrangements but not in SMU II.  Id., ¶ 22.

20      The Supreme Court noted that lawmakers supporting RLUIPA anticipated that it
21  would be applied with "due deference to the experience and expertise of prison and jail
22  administrators in establishing necessary regulations and procedures to maintain good order,
23  security and discipline, consistent with consideration of costs and limited resources."  See
24  Cutter, 125 S. Ct. at 2123 (citing Joint Statement S7775, quoting S. Rep. No. 103-11, p. 10
25  (1993), U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900).  The Ninth Circuit
26  has recognized that security is a compelling state interest.  Warsoldier, 418 F.3d at 998.
27  Given this law, Plaintiff has not demonstrated a likelihood of success on the merits of his

28

1  claim that refusing to build a sweat lodge for SMU II inmate fails to further a compelling
2  governmental interest.

3        Plaintiff also seeks to attend sweat lodge ceremonies with a spiritual advisor.
4  Presumably, he would periodically like to join the general population in their sweat lodge
5  ceremonies.  Group activities are not permitted for inmates in SMU II for security reasons.
6  (Linderman Aff., ¶ 24.)  Allowing Plaintiff to attend sweat lodge ceremonies with the general
7  population, regardless of whether a spiritual advisor also attends, would place security
8  interests in jeopardy.  Plaintiff has not shown that he is likely to prevail on the merits of his
9  claim that denying him access to such ceremonies does not further a compelling government
10  interest in security.  Nor has he shown that he is likely to succeed in a claim that there are
11  other means of ensuring security that would be less restrictive.

12        *ii. Pipe ceremony.*

13        Plaintiff seeks to participate in a pipe ceremony with an advisor or volunteer.
14  Defendants assert that a pipe ceremony may be conducted alone in the recreation yard, with
15  or without an advisor.  (Linderman Aff., ¶ 18.)  Defendants claim that it is Plaintiff's
16  responsibility to find an advisor willing to visit him, as none are on staff.  Id., ¶ 19.  Plaintiff
17  has not replied.

18        Parties may rely on developments postdating the pleadings to show whether injunctive
19  relief remains appropriate.  See Farmer v. Brennan, 511 U.S. 825, 846-47 (1994).
20  Defendants' concession that Plaintiff may conduct a pipe ceremony during recreation, with
21  or without an advisor, presumably has resolved this issue.  Plaintiff therefore has not shown
22  that he is entitled to injunctive relief.

23        *iii. Headband and medicine bag.*

24        Plaintiff alleges that his red and blue headband were confiscated by Defendant
25  McWilliams, that he is not permitted to purchase a headband, and that Defendants
26  McWilliams and Schriro refuse to allow him to wear his medicine bag or obtain an
27  alternative.  In response, Defendants concede that inmates in SMU II are permitted to wear
28  a headband or a medicine bag when in the recreational area for two hours per session, three

days per week, or while in their cells involved in religious practice. (Linderman Aff., ¶ 11.) For security reasons, the headband and medicine bag may not be worn while in transit between his cell and the recreational area; instead, inmates may have duplicate items at each location. Id., ¶ 12.

Defendants contend that Plaintiff's practice has not been substantially burdened because Plaintiff has failed to recognize that he may wear his religious articles. As stated, parties may rely on developments postdating the pleadings to show whether injunctive relief remains appropriate. See Farmer, 511 U.S. at 846-47. Plaintiff has not replied to Defendants' concession that he may have duplicate sets of a headband and medicine bag for use either in his cell or during recreation. On this record, Plaintiff has failed to establish his right to injunctive relief.

iv. Smudging, talking circles and Pow-Wows.

Plaintiff would like to participate in group activities involving smudging, talking circles, and Pow-Wows. Defendants contend that group gatherings such as talking circles and Pow-Wows are not permitted in SMU II because of security concerns. (Linderman Aff., ¶ 24.) They concede that inmates in SMU II may participate in smudging during recreation time. Id., ¶ 14. Defendants contend that the compelling governmental interest in security justifies restricting inmates in SMU II from participating in group activities and that they have offered a less restrictive means such as a solitary smudging during recreation time. Plaintiff has not replied. Presumably, he is satisfied with the concession. In any case, Plaintiff has not shown that he is likely to succeed on the merits and therefore entitled to injunctive relief.

In light of Plaintiff's inability to show a likelihood of success on his claims under RLUIPA, he also cannot satisfy the First Amendment standards. In other words, if Plaintiff has failed to establish his right to injunctive relief under the more favorable requirements of RLUIPA, he cannot show an entitlement to such relief under the less demanding standards of the First Amendment. Plaintiff's request for injunctive relief will therefore be denied without prejudice.

1    **MOTION TO DISMISS AND OTHER MOTIONS**

2    **A.      Parties' Contentions.**

3            Defendants contend that Plaintiff failed to grieve Count I (continued placement in

4    SMU II) and Count III (retaliation) up to the Director's level.  Defendants submit the

5    affidavit of Aurora Aguilar, a Hearing Officer, in support of their contentions.  (Aguilar Aff.,

6    Mot., Ex. 1, Dkt. #16.)  In response, Plaintiff submits several reasons why he believes the

7    exhaustion requirement is satisfied.  In support, he submits an affidavit of Inmate Jay Jonas.

8    (Jonas Aff., Mot. to Strike, Ex. 5.)  Defendants have replied that the process is not excused

9    by a claim of futility.

10   **B.      Motion to strike.**

11           Plaintiff also seeks, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure,

12   to strike Aguilar's affidavit as made in bad faith on the basis that her averments are

13   misleading.  Rule 12(f) permits the court to strike "from any pleading any insufficient

14   defense or any redundant, immaterial, impertinent, or scandalous matter."  Its purpose is "to

15   avoid the expenditure of time and money that must arise from litigating spurious issues by

16   dispensing with those issues prior to trial."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d

17   880, 885 (9th Cir. 1983).

18           By its own terms, Rule 12(f) applies to a "pleading" and not an affidavit.  See

19   Wimberly v. Clark Controller Co., 364 F.2d 225, 227 (6th Cir. 1966); Wright & Miller, 5C

20   FED. PRAC. & PROC. CIV.3d § 1380 (2005) (Rule 12(f) is "neither an authorized nor a proper

21   way . . . to strike an opponent's affidavits").  Moreover, Plaintiff does not challenge the legal

22   sufficiency of Augilar's affidavit; he simply disagrees with her position.  This disagreement

23   is not a basis to strike.  Plaintiff was free to (and did) submit countervailing evidence.

24   Finally, even if the affidavit could be stricken, it does not contain any of the types of material

25   listed in Rule 12(f).  Thus, the Court will deny Plaintiff's motion.

26   **C.      Legal Standards for Exhaustion.**

27           A prisoner may not challenge prison conditions without first exhausting available

28   administrative remedies.  42 U.S.C. § 1997e(a); see Roles v. Maddox, 439 F.3d 1016, 1017

(9th Cir. 2006).  Exhaustion is mandated regardless of the type of relief sought, Booth v. Churner, 532 U.S. 731, 741 (2001), and for all inmate suits regarding prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002).  Defendants bear the burden of raising and proving the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); see also Ngo v. Woodford, 403 F.3d 620, 626 (9th Cir.), cert. granted, 126 S. Ct. 647 (2005).  The lack of exhaustion is properly raised as a matter of abatement in an unenumerated Rule 12(b) motion.  Wyatt, 315 F.3d at 1119-20.  Under this standard, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at 1120.   The Court has broad discretion as to the method to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).  Lack of exhaustion warrants dismissal of the claim without prejudice.  Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005).

**D.      Exhaustion Analysis.**

1.  Grievance policy.

Issues that may generally be grieved are set forth in ADC's Department Order 802, which provides in pertinent part:

> Inmates *may* use the grievance process for the following issues:
>
> Property, staff, visitation, mail, food service, institutional procedures, Department Written Instructions, program access, medical care, religion and conditions of confinement.
>
> * * * *
>
> Inmates may not use the inmate grievance system for classification, discipline issues, or any other system which has its own unique appeal process.

DO 802.01 (1.1.1, 1.2.3) (emphasis in original) (Attach. A to Aguilar Aff., Defs.' Mot. to Dismiss, dkt. #16; Ex. 1 to Pl.'s Resp., dkt. #27).

Classification has its own appeal system as set forth in DO 801.  (Ex. 2 to Pl.'s Mot. to Strike, dkt. #27).  The policy provides for only "one appeal opportunity" of the "final decision by the Central Classification Office."  Id.  On October 25, 2005 – after Plaintiff filed

1   this action – DO 801 was modified by Director's Instruction #232.[2]  Revised DI #232, part

2   801.06, contains a section that applies to Procedures for Maximum Security Placement.

3   Under Part 1.2, there is an appeal provision for the decision to place an inmate in maximum

4   custody.   There are provisions for periodic review (60 days, 180 days, and annually

5   thereafter), but no indication how these may be appealed.  DI #232, part 801.06 (1.3).

6       2. Count I - Meaningful review of Placement in SMU II.

7       Defendants bear the burden of demonstrating that the pertinent relief is available.

8   Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).  They contend that Plaintiff's challenge

9   in Count I to the lack of meaningful review of his continued placement in SMU II may be

10  grieved under DO 802 as a challenge to the lack of institutional procedures regarding

11  confinement in SMU II and as a claim regarding conditions of confinement.  There is no

12  record that Plaintiff filed a grievance regarding this claim.

13      Plaintiff contends that Count I was not grievable under DO 802 because classification

14  has its own process under DO 801.  The Court is not persuaded by this contention.  The

15  appeal process under DO 801 applies to the *decision* to place an inmate under a certain

16  classification, not to the adequacy of later review of that decision.

17      Plaintiff next contends that the revised DI #232 allows appeals of classification

18  procedures.  The Court is not persuaded by this contention.  Even after revision, DI #232

19  only definitively allows appeal of the initial placement decision.  There are no specific appeal

20  procedures in DI #232 for appeal of the "procedures" after placement, except to provide that

21  periodic review occurs at regular intervals (60 days, 80 days, and annually thereafter).

22  Moreover, this revision took place after the event in suit.  If Plaintiff is trying to say that

23  revised DI #232 defines the parameters of the superseded DO 802, he then would have been

24  obligated to raise Count I in the classification appeal process under DO 802.  He did not do

25  that.  Although he submits an example of an appeal of a classification review, (ex. #3, Mot.

26

27            

28      [2]Although Plaintiff asserts that he attached this revised new policy as Exhibit 2 (Resp. at 3, dkt. #28; Exhibit 2, dkt. #27), he has actually submitted a copy of the former policy.  The current policy is available at http://www.azcorrections.gov/Policies/DI232.html.

to Strike), he raised only a claim that his classification score should have been lowered because he had no disciplinary violations.  He did not raise a claim that post-classification review procedure was not meaningful.  Thus, assuming that DO 802 was an available method to exhaust administrative remedies, Plaintiff did not do so.

Alternately, Plaintiff contends that the issue was exhausted when he appealed his validation as a member of a STG.  (Mot. to Strike, Ex. 6.)  This appeal, however, does not contain a claim that the periodic review of his placement is not meaningful.  Thus, the issue was not presented to prison officials.

Inmates must exhaust remedies that are "available," which means they must "navigate all of a prison's administrative review process" regardless of the type of relief sought.  Brown, 422 F.3d at 934 (citing Booth, 532 U.S. at 739).  The underlying goal is to allow corrections official the opportunity to address complaints internally before coming to federal court.  Porter, 534 U.S. at 525.  Plaintiff did nothing to satisfy this goal.  He could have filed a grievance under DO 802 or he could have included the claim in an appeal from a decision denying reclassification under DO 801.  He did not attempt either. The Supreme Court has declined to read a futility exception into § 1997e(a), see Booth, 532 U.S. at 741 & n.6, and the Court will not permit Plaintiff to create one.  On this record, the Court is satisfied that administrative relief was available for Plaintiff's claim.  The Court will grant Defendants' motion to dismiss Count I.

3.  Count III - Retaliation.

In Count III, Plaintiff asserts that his continued placement in SMU II is retaliatory for refusing to inform on other prisoners.  Defendants contend that this claim was grievable under DO 802 as a grievance against "staff."

Plaintiff contends that his retaliation claim is not grievable because it is not listed under DO 802.  The Court is not persuaded that DO 802 is so narrow.  Plaintiff also asserts that his retaliation claim is intertwined with his exhausted claims regarding conditions of confinement.  There is no indication, however, that a retaliation claim was raised in these grievances.  (See Attach. B. to Aguilar Aff., Mot. to Dismiss, dkt. #16.)

- 13 -

1    Finally, Plaintiff submits an affidavit of inmate Jay Jonas to show that Jonas had a

2    similar retaliation claim that was returned unprocessed. (Jonas Aff., Mot. to Strike, Ex. 5,

3    dkt. #27.) For his retaliation claim, Jonas (1) filed an informal resolution that was denied,

4    (2) appealed the response to the grievance coordinator, (3) appealed the coordinator's

5    response to the deputy warden, and (4) finally appealed to the director. Id., ¶ 8. The Director

6    refused his claim and returned it as unprocessed because it had been addressed in another

7    grievance. Id., ¶¶ 8-9. This evidence proves that retaliation claims are grievable. Jonas'

8    retaliation claim was returned only when it was discovered to be a duplicate. In addition,

9    Jonas admits that he raised the same claims as Plaintiff's Count I and III in another lawsuit,

10   and both counts were dismissed as unexhausted. (Jonas Aff., ¶ 5); see also Jonas v. Schriro,

11   CV 04-2719-PHX-SMM (MEA) (D. Ariz.) (dkt. #19). Plaintiff could have grieved his

12   retaliation claim. The Court will grant Defendants' motion to dismiss Count III.

13   **E.    Miscellaneous Motions**

14   Plaintiff has also filed a "Motion to Amend/Correct" (dkt. #8) that re-submits a copy

15   of his complaint and other motions after an extra set was returned to him by the Clerk with

16   a filemark stamp. The Court has adequate copies of those pleadings. Plaintiff's motion will

17   be denied as moot.

18   Plaintiff has also moved for extension of time (dkt. #17) to respond to Defendants'

19   motion to dismiss. This motion is moot, as Plaintiff has already filed a response which the

20   Court has considered. See Dkt. #28. The motion will therefore be denied.

21   **IT IS ORDERED**:

22        1.    Plaintiff's Motion for Preliminary Injunction (dkt. #5) is **denied** without

23              prejudice. 2. Defendant's Motion to Dismiss (dkt. #16) is **granted**. Counts

24              I and III are **dismissed** without prejudice.

25        2.    Defendant's Motion to Accept Untimely Response (dkt. #35) is **granted**.

26              Plaintiff's Motion to Amend/Correct (dkt. #8), for Extension of Time (dkt.

27              #17) and to Strike (#27) are **denied**.

28

1

      3.     This matter is referred back to Magistrate Judge Jacqueline J. Marshall for

2

           further proceedings on Counts II and IV of Plaintiff's Complaint.

3

DATED this 18th day of May, 2006.

4

5

6

                             _____

7

                                 David G. Campbell
                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28