1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                          **DISTRICT OF ARIZONA**
8   Edward Hernandez,                          )
                                               )          No. CV 05-2853 PHX-DGC (JM)
9                     Plaintiff,               )
                                               )
10  v.                                         )          **REPORT AND**
                                               )          **RECOMMENDATION**
11  Dora Schriro, et al.,                      )
                                               )
12                                             )
                    Defendants.                )
13  _____)

14          In accordance with 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice of the

15  United States District Court for the District of Arizona, this case was referred to the

16  Magistrate Judge for all pretrial proceedings and report and recommendation. By order dated

17  May 18, 2006, the District Court granted Defendants' Motion to Dismiss Counts I and III of

18  Plaintiff's Complaint. Plaintiff subsequently sought reconsideration of the order of dismissal

19  and the Magistrate Judge, pursuant to Local Rule – Civil 7.2(g), ordered Defendants to file

20  a response to the Motion for Reconsideration.  For the reasons explained below, the

21  Magistrate Judge recommends that the District Court, after independent review of the record,

22  grant the Motion for Reconsideration and reinstate Counts I and III of the Complaint.

23  **A.    Background**

24          This is a civil rights action filed pursuant to 42 U.S.C. § 1983 on September 19, 2005.

25  Plaintiff, a Native American Indian, is housed at the highest custody level of the Arizona

26  Department of Corrections known as Special Management Unit II.  He was placed in SMU

27  II after he was validated as a member of a Security Threat Group known as the Warrior

28  Society.

1    Plaintiff brought four counts for relief in his Complaint: (1) the conditions of SMU

2 II trigger a liberty interest requiring periodic review that is meaningful: (2) the conditions of

3 SMU II violate the Eighth Amendment; (3) his continued placement in SMU II is retaliatory

4 for refusing to inform on other prisoners; and (4) his rights under the First Amendment and

5 Religious Land Use of Institutionalized Persons Act were violated by restriction on his

6 Native American traditions.  On January 3, 2006, Defendants filed a Motion to Dismiss

7 Counts I and III.  By order dated May 18, 2006, the District Court granted the motion and

8 dismissed Counts I and III based on Plaintiff's apparent failure to exhaust his administrative

9 remedies.  Subsequently, Plaintiff filed a Motion for Reconsideration of the dismissal, this

10 time attaching additional documentation related to his exhaustion efforts.  The Magistrate

11 Judge ordered Defendants to respond to the Motion for Reconsideration.

12 **B.    Discussion**

13    Exhaustion is an affirmative defense as to which defendants have the burden of proof,

14 and is properly raised in an "unenumerated" Rule 12(b) motion to dismiss rather than in a

15 motion for summary judgment.  *See Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003).

16 In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court may

17 look beyond the pleadings and decide disputed issues of fact.  *See id*. at 1119-20.

18    The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

19 provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

20 § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

21 correctional facility until such administrative remedies as are available are exhausted." *See*

22 42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and not merely directory.

23 *See Porter v. Nussle,* 534 U.S. 516 (2002).  All available remedies must be exhausted and

24 those remedies "need not meet federal standards, nor must they be 'plain, speedy, and

25 effective.'" *See id.*  Exhaustion is a prerequisite to all prisoner lawsuits concerning prison

26 life, whether such actions involve general conditions or particular episodes, whether they

27 allege excessive force or some other wrong, and even if they seek relief not available in

28

1  grievance proceedings, such as money damages. *See id.* at 988, 992; *Booth v. Churner,* 532

2  U.S. 731, 741 (2001).

3       Attached to the Motion for Reconsideration as Exhibit II is an ADOC Inmate

4  Grievance filed by Plaintiff on July 20, 2005.  In the grievance, Plaintiff alleges *inter alia*

5  that prison officials "refuse to provide meaningful review of [his] indefinite confinement [in

6  SMU II]."  In the section of the grievance form that provides for a description of the action

7  taken in response to the grievance, Corrections Officer III Focht returned the grievance

8  unprocessed and noted: "Rejected: this is a second condition of confinement issue." *Motion*

9  *for Reconsideration*, Exhibit II.  The rejection of the unprocessed grievance was apparently

10  based on a policy described in a July 17, 2003, Inmate Letter Response which informed

11  inmates that:

12          [a] new directive has come down form Central Office,
        concerning Conditions of Confinement Grievances. You will be

13          allowed one Grievance on Conditions of Confinement.  It will
        be processed.  If you include anything in it that does not pertain

14          to Conditions of Confinement or if you send more than one
        Grievance on Conditions of Confinements it/they will be sent

15          back unprocessed.

16  *Id.*, Exhibit I.  Petitioner contends that Claims I and III were included in this grievance and

17  were exhausted because the grievance was returned unprocessed.[1]

18       In response, Defendants contend that "[t]he allegations in Counts I and III do not

19  pertain to [Plaintiff's] conditions of confinement at SMU II." *Response to Motion for*

20  *Reconsideration*, p. 5.  Accordingly, they contend,  these grievances were not subject to the

21  "one conditions of confinement grievance" rule described in the July 17, 2003, Inmate Letter

22  Response.   Respondents admit, "nevertheless, it appears that CO III Focht rejected

23

24       [1]In ruling on the Motion to Dismiss, the District Court did not have copies of the
rejected Grievance or the Inmate Letter Response.  Plaintiff does not explain why he did not

25  submit this information in response to the Motion to Dismiss.  Nevertheless, the Magistrate
Judge, in light of the challenges of litigating from inside prison (and particularly SMU II) and

26  due to the significance of the new evidence, granted reconsideration of the dismissal. *See,*

27  *e.g., School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1266 (9th Cir.
1993) (reconsideration appropriate if initial decision was manifestly unjust).

28

1    [Plaintiff's] July 20, 2005, Grievance because of her conclusion that it was [Plaintiff's] second

2    attempt to grieve his conditions of confinement."  Respondents contend that even though CO

3    Focht's rejection of the grievance was a mistake, "[Petitioner] was still obligated to file a

4    grievance appeal to a higher official . . . ."  *Id.*, p. 6.  The Court is not persuaded by this

5    argument.

6         In *Woodford v. Ngo,* 126 S.Ct. 2378 (2006), the Supreme Court reversed the Ninth

7    Circuit and held that the PLRA requires a prisoner to exhaust any available administrative

8    remedies before challenging prison conditions in federal court, including following all

9    procedural rules for filing a grievance.  *Woodford,* 126 S.Ct. at 2383-84. Specifically,

10   exhaustion requires using all steps that the agency holds out, and doing so properly, including

11   complying with any required deadlines.  *Id.* at 2385.  A remedy is available for purposes of

12   the PLRA as long as the administrative process has authority to take some action in response

13   to the prisoner's grievance, even if the action that might be taken is not the remedial action

14   sought by the prisoner.  *Booth v. Churner,* 532 U.S. 731, 736 (2001).  Courts may not read

15   futility or other exceptions into the statutory exhaustion requirement of the PLRA.  *Id.* at 741

16   n. 6.

17        Here, Plaintiff has conceded that he did not appeal the July 20, 2005 grievance.  this

18   concession is a valid ground for dismissal of his claims, so long as no exception to

19   exhaustion applies.  *Wyatt*, 315 F.3d at 1120.  The question is whether administrative

20   remedies, even if futile, remained available.  In *Hemphill v. New York*, 380 F.3d 680, 686 (2nd

21   Cir. 2004), the Second Circuit devised a multi-step approach for resolving whether remedies

22   were actually available to an aggrieved prisoner.  Once a court determines that such remedies

23   existed, the next inquiry is to consider whether the defendants had forfeited the defense or,

24   as is pertinent here, "consider whether 'special circumstances' have been plausibly alleged

25   that justify the prisoner's failure to comply with administrative procedural requirements."

26   *Id.* at 686; *see also Townes v. Paule*, 407 F.Supp.2d 1210, 1216 (S.D. Ca. 2005) (applying

27   *Hemphill*).

28

1    In making its inquiry of "special circumstances," the Court must determine whether

2    a similarly situated individual of ordinary firmness would have deemed the standard

3    grievance procedures available. *Hemphill*, 380 F.3d at 688 (citation and internal quotation

4    omitted).  It is undisputed that Plaintiff's grievance was rejected as "a second conditions of

5    confinement issue." *Motion for Reconsideration*, Exhibit II.  Defendants characterize the

6    rejection as "a mistake," as the grievance was not one related to conditions of confinement.

7    *Response*, pp. 5-6.  Nevertheless, Defendants contend without citation or explanation that

8    Plaintiff was required to appeal the rejection of the grievance.  *Id.* at 6.  This argument is

9    unpersuasive given the limitations outlined in the July 17, 2003, Inmate Letter Response.

10   *Motion for Reconsideration*, Exhibit I.  The Response, which was drafted by Corrections

11   Officer Focht,  the same CO who rejected Plaintiff's grievance, unequivocally provides that

12   if more than one conditions of confinement grievance is submitted, the grievances "will be

13   sent back unprocessed." *Id.*  Given this policy, and the fact that the grievance at issue was

14   sent back unprocessed, Plaintiff's continued pursuit of his grievance would have been a

15   violation of prison policies as explained to him.  Even if the rejection of the grievance was

16   in error, Defendants cannot legitimately claim that Plaintiff should have nevertheless

17   disregarded the policy and filed an appeal.

18   In support of his position, Plaintiff also submitted another memorandum from CO

19   Focht addressing ADOC's grievance system. *Memorandum attached to Declaration of*

20   *Edward Hernandez*.  The memorandum, parts of which are redacted, but to which

21   Defendants have not objected or sought to explain, identifies the reasons for the return of

22   unprocessed grievances. Entry number eleven on the list indicates, "[g]rievance was deemed

23   'Unprocessed,' therefore, cannot be appealed." *Id.*  Although there is no indication or claim

24   that this memorandum was sent to Plaintiff in response to his grievance, it nevertheless

25   supports a determination that an inmate of ordinary firmness would not have appealed a

26   grievance returned as unprocessed.  The prison system in general, and the grievance system

27   in particular, is founded upon a system of rules that the prison administration expects to be

28

5

1  followed.  Inmate violations of such rules often result  punitive repercussions, and it is

2  therefore unreasonable to expect Plaintiff, given the circumstances of his case, to pursue the

3  appeal of his unprocessed grievance.

4  **C.      Recommendation**

5      Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District

6  Court, after its independent review, issue an Order **granting** Plaintiff's Motion for

7  Reconsideration and reinstate Counts I and III of the Complaint.

8      This Recommendation is not an order that is immediately appealable to the Ninth

9  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

10  Appellate Procedure, should not be filed until entry of the District Court's judgment.

11      However, the parties shall have ten (10) days from the date of service of a copy of this

12  recommendation within which to file specific written objections with the District Court.  *See*

13  28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.

14  Thereafter, the parties have ten (10) days within which to file a response to the objections.

15  If any objections are filed, this action should be designated case number: **CV 05-2853-PHX-**

16  **DGC**.  Failure to timely file objections to any factual or legal determination of the Magistrate

17  Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.

18  *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

19      DATED this 29th day of September, 2006.

20

21

22

23

24                                    Jacqueline Marshall
                                      United States Magistrate Judge

25

26

27

28